611 So.2d 28 (1992)
Wanda FINCANNON, Appellant,
v.
EASTERN AIRLINES and Travelers Insurance, Appellees.
No. 92-266.
District Court of Appeal of Florida, First District.
December 22, 1992.
*29 William P. Levens, Tampa, for appellant.
Ellen H. Lorenzen, Tampa, for appellees.
SMITH, Judge.
Claimant appeals an order of the judge of compensation claims denying benefits after maximum medical improvement on the ground that claimant's current condition is not related to her employment. We reverse.
Claimant, who is 59 years old, worked for Eastern Airlines for 17 years as a telephone reservationist. During the last years of her employment, she experienced hoarseness, laryngitis and trouble talking. Because of her voice difficulties, she ceased working July 23, 1986. She was examined by Dr. Irvine, who diagnosed polyps on her vocal chords and recommended surgery to remove them. She had a vocal chord stripping and polypectomy on August 11, 1986. Her chords were clear after surgery. She returned to work briefly in October for a few days but had to stop because she got laryngitis and a very sore throat. Upon a subsequent visit to Dr. Irvine in January 1987, she was told that nodules had returned on her vocal chords.
Despite the fact that claimant had a long history as a smoker and that she suffered from sinus problems and allergies, Dr. Irvine opined that a significant contributing factor in claimant's voice problems was the amount of talking she did in her employment. Over the next few years, claimant was seen by several doctors, speech pathologists and a voice therapist. None opined with any degree of certainty that claimant could expect full recovery of vocal functioning. One speech pathologist opined that claimant was at a high risk for recurrence of vocal pathology should she return to an employment situation requiring extensive voice use. She recommended that claimant seek employment which required minimal voice use and the absence of excessive ambient noise, such as computer work. Accordingly, claimant enrolled in a computer training program.
In the meantime, claimant filed a claim for past medical treatment and continuing medical treatment from July 23, 1986 and temporary benefits. The claim was tried before Deputy Commissioner Hardee, who determined that claimant's voice and throat were injured as a result of excessive use of the telephone in her work and that this was an accident by trauma. He ruled that claimant was entitled to past medical bills and continuing medical treatment at the expense of the employer/carrier. The claimant was granted temporary total disability benefits from July 23, 1986 until October 13, 1986, with the exception of the few days she worked for the employer for which she was entitled to temporary partial disability benefits. The deputy commissioner reserved jurisdiction to determine what further payment of temporary total or temporary partial was due to claimant after October 13, 1986. This order was not appealed.
Thereafter, the employer/carrier paid for claimant's continual medical treatment and *30 also disability/wage loss benefits. Rehabilitation specialists were hired to help claimant attempt to find work. Her job search was unsuccessful. In December 1990, she moved to Texas where she continued an unavailing job search.
In Texas, she began treatment with Dr. Neal, an otolaryngologist. Contrary to Dr. Irvine, Dr. Neal felt that the problem with claimant's vocal chords was primarily due to allergies, possible gastroesophageal reflux, but more importantly her smoking. Based upon Dr. Neal's opinion, the E/C discontinued the payment of benefits to claimant. Claimant filed a claim seeking PTD benefits. This claim was heard by Judge of Compensation Claims Douglas.
The judge found that changes in the claimant's vocal chords due to age, allergies, post-nasal drip and smoking are much more likely to be the cause of her current problems than her employment with Eastern Airlines. He found that claimant reached maximum medical improvement on January 8, 1987 and as of that date, she was no longer suffering from any condition related to her employment at Eastern Airlines. He noted the lack of any medical evidence that claimant sustained any permanent impairment as the result of her vocal nodules. He awarded her benefits for the period October 13, 1986 through January 7, 1987, rejecting her claim for PTD benefits thereafter inasmuch as it was his conclusion that her current condition was totally unrelated to her employment at Eastern. In so ruling, the JCC erred.
None of the medical evidence in the record supports the JCC's finding that claimant's current condition is totally unrelated to her employment at Eastern. A claimant seeking workers' compensation benefits is not required to show her compensable injury was the sole cause of her disability. So long as the claimant's impairment can be found to be a contributing factor, benefits are appropriate. Tampa General Hospital v. Lawson, 547 So.2d 260 (Fla. 1st DCA 1989). Though there were other possible causes of claimant's voice problems, it was the opinion of Dr. Irvine, an opinion which Deputy Commissioner Hardee apparently accepted, that claimant's work conditions were a contributing factor in her subsequent injury and disability. While the judge of compensation claims placed great reliance on the opinion of Dr. Neal to support his conclusion that claimant's smoking, age and allergies are now the sole culprits causing her voice problem, the judge of compensation claims overlooked other aspects of Dr. Neal's written opinion letter. Significantly, Dr. Neal said:
Your first question asked if there is some residual effects or sequelae from the voice and throat problems recognized by the Florida court as having been work related. My examination shows the voice to be somewhat rough, with mild edema of the vocal chords, and small nodular areas. Whatever the cause, there is sequelae.
The order of Deputy Commissioner Hardee, which the employer/carrier did not appeal, finds that claimant's voice problems were caused by her employment. It is well established that not only is the original injury compensable, but so is all the sequelae of the injury. Elliott v. Dugger, 579 So.2d 827, 830 (Fla. 1st DCA 1991).
There is no real dispute that immediately after claimant's surgery, she ceased smoking until January 8, 1987.[1] When claimant's surgery and voice therapy and cessation of smoking failed to prevent the return of nodules on her voice chords, it was recommended *31 that she not return to employment that required much voice usage. She had previously attempted to return to Eastern but that resulted in voice failure. She subsequently attempted retraining and reentry into the labor market but her efforts, to date, have failed. This evidence restricting claimant's employment to jobs which require very little voice usage supports a finding of permanent impairment. Dayron Corp. v. Moorehead, 509 So.2d 930 (Fla. 1987); Jackson v. Publix Supermarket, 520 So.2d 50 (Fla. 1st DCA 1987).
REVERSED and REMANDED for further proceedings consistent with this opinion.
SHIVERS and KAHN, JJ., concur.
NOTES
[1] There is a dispute about her smoking habits thereafter, claimant contending that she ceased smoking on February 14, 1987 and did not continue smoking except for a brief period in 1991, the employer/carrier taking the position that she was an habitual smoker. In this regard, the employer/carrier had surveillance films taken of claimant which showed her smoking continuously. These were reviewed by the judge of compensation claims who was convinced that claimant never stopped smoking for any appreciable period of time. He discounted her contrary testimony as not credible and, concluded that all of her mannerisms on the film indicated that she was an habitual smoker. We question the JCC's expertise to draw the conclusion based upon a surveillance film that a person is a "habitual smoker," but do not address the issue further as it is not pertinent to a resolution of this case.